IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 17–cv–01667–KMT

RODOLFO RIVERA, JR.,

    Plaintiff,

v.

OFFICER JOHN GRANILLO/CSPD 3876,

    Defendant.

---

# ORDER

---

This matter is before the court on Defendant's "Motion for Summary Judgment" (Doc. No. 52 [Mot.], filed March 15, 2019). Plaintiff responded, and Defendant replied. (Doc. No. 55 [Resp.], filed April 5, 2019; Doc. No. 56 [Reply], filed April 19, 2019.)

## SUMMARY OF CASE

Plaintiff, proceeding *pro se*, filed his complaint on or about July 10, 2017, alleging Defendant Granillo violated his constitutional rights by arresting him without probable cause, arresting him on the basis of gender, and injuring him with unduly tight handcuffs. (Doc. No. 1 [Compl.].) On April 24, 2018, this court dismissed Plaintiff's lack of probable cause claim and his gender discrimination claim. (Doc. No. 24.) Defendant now seeks summary judgment on the remainng excessive force claim. (Mot.)

## UNDISPUTED FACTS

1. On October 30, 2015, Defendant Officer Granillo and Sergeant Fred Walker responded to a call for service at 5740 Pemberton Way. (Compl., Ex. 3 at 11.) The complaining witness alleged Plaintiff had struck her the night prior, and she wanted Officers to remove Plaintiff from her home. (*Id.*)

2. Sergeant Walker instructed Defendant to handcuff Plaintiff and detain him in Defendant's patrol car. (*Id.* at 18.)

3. After placing Plaintiff in handcuffs, Defendant checked them for tightness by ensuring there was a finger's width of space between each handcuff and each of Plaintiff's wrists. (Mot., Ex. B, Aff. of Officer John Granillo, ¶ 5; Compl., Ex. 3 at 19.) Defendant then double-locked the handcuffs, which prevents the handcuffs from becoming tighter. (Mot., Ex. B, ¶ 5; Ex. C, Van Ooyen Report, at 4. ¶ 18.)

4. When Defendant applied the handcuffs, Plaintiff did not complain. (Mot., Ex. A, Aff. of Sergeant Fred Walker, ¶ 6.)

5. Defendant escorted Plaintiff to his patrol car and returned to the house. (Mot., Ex. B, ¶ 6.) Sergeant Walker remained outside in his own vehicle, which was not equipped to transport suspects, to watch Plaintiff. (Mot, Ex. A., ¶¶ 7–8.) After fifteen minutes, Sergeant Walker checked on Plaintiff and asked how he was doing. (*Id.* ¶ 9.) Plaintiff did not complain about the handcuffs at that time. (*Id.*)

6. The handcuffs did not start hurting Plaintiff until he leaned back in his seat and readjusted his hands and then began struggling with the handcuffs. (Mot., Ex. D at 54, ll. 1–12; at 68, ll. 2–22.)

7.      At approximately 12:15 am on October 31, 2015, Defendant returned to his patrol car to transport Plaintiff to the Falcon Substation. (Mot., Ex. B, ¶ 11.; Resp., Ex. E at 3.) The trip to the police station took twelve minutes. (Mot., Ex. B, ¶ 11.) Plaintiff described the trip as "pretty quick." (Mot., Ex. D, ll. 7–8.)

8.      During the trip to the substation, Plaintiff, for the first time, complained of wrist pain. (Mot., Ex. B, ¶ 8; Ex. D at 60, ll. 2–16.) Plaintiff made his complaint in a conversational manner. (Ex. B, ¶ 8.)

9.      After arriving at the Falcon Substation, Defendant again checked the handcuffs for tightness and found again that they had not gotten any tighter. (Mot., Ex. B, ¶ 12; Compl., Ex. 3 at 19.) Defendant then removed the handcuffs. (Ex. B, ¶ 12.)

**STANDARD OF REVIEW**

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. The following axioms have a bearing on summary judgment disposition—*i.e.*, (1) that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); (2) "the defendant should seldom if ever be granted summary judgment where his state of mind is at issue and the jury might disbelieve him or his witnesses as to this issue" *id.* at 256; and (3) "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.

Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. The following axioms have a bearing on summary judgment disposition—*i.e.*, (1) that "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); (2) "the defendant should seldom if ever be granted summary judgment where his state of mind is at issue and the jury might disbelieve him or his witnesses as to this issue" *id.* at 256; and (3) "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor." *Id.* at 257.

Moreover, because Plaintiff is proceeding *pro se*, the court, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). At the summary judgment stage of litigation, a plaintiff's version of the facts must find support in the record. *Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing

parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d at 1312.

## ANALYSIS

A.  *Qualified Immunity*

Defendant argues he is entitled to qualified immunity on Plaintiff's excessive force claim asserted against him in his individual capacity. The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz,* 533 U.S. 194, 121 (2001).

"In resolving a motion . . . based on qualified immunity, a court must consider whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011) (quoting *Pearson*, 555 U.S. at 232) (internal quotations omitted). Once a defendant invokes qualified immunity, the burden to prove both parts of this test rests with the plaintiff, and the court must grant the defendant qualified immunity if the plaintiff fails to satisfy either part. *Dodd v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010). Where no constitutional right has been violated "no further

inquiry is necessary and the defendant is entitled to qualified immunity." *Hesse v. Town of Jackson, Wyo.*, 541 F.3d 1240, 1244 (10th Cir. 2008) (quotations omitted).

   1. *Excessive Force Claim*

Defendant argues he is entitled to summary judgment on Plaintiff's excessive force claim.

"The Fourth Amendment forbids unreasonable seizures, including the use of excessive force in making an arrest." *Casey v. City of Federal Heights*, 509 F.3d 1278, 1281 (10th Cir. 2007). Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment. *See, e.g.*, *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1313 (10th Cir. 2009). This standard "requires inquiry into the factual circumstances of every case; relevant factors include the crime's severity, the potential threat posed by the suspect to the officer's and others' safety, and the suspect's attempts to resist or evade arrest." *Medina v. Cram*, 252 F.3d 1124, 1131 (10th Cir. 2001) (citing *Graham*, 490 U.S. at 396). A "court assesses the reasonableness of an officer's conduct from the perspective of a reasonable officer on the scene, acknowledging that the officer may be forced to make split-second judgments in certain difficult circumstances." *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1220 (10th Cir. 2005) (quoting *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1314 (10th Cir. 2002) (further citation omitted)). The objectively unreasonable test considers the totality of the circumstances "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Havens v. Johnson*, 783 F.3d 776, 781–82 (10th Cir. 2015) (quoting *Estate of Larsen ex rel. Sturdivan v. Murr*, 511 F.3d 1255, 1259 (10th Cir. 2008) (internal quotation marks omitted)).

"[I]n nearly every situation where an arrest is authorized, . . . handcuffing is appropriate[.]" *Fisher v. City of Las Cruces*, 584 F.3d 888, 896 (10th Cir. 2009). Defendant argues, and the court agrees, that there is no evidence to suggest that Defendant applied the handcuffs incorrectly or in an unreasonable manner. Rather, the undisputed facts show that Plaintiff did not complain when Defendant applied the handcuffs or up to approximately 15 minutes later, when Sergeant Walker checked on Plaintiff. (Mot., Ex. A, ¶¶ 6, 9.) Nevertheless, the question in this case is "whether the failure to *adjust* [Plaintiff's] handcuffs . . . constitutes excessive force." *Fisher*, 584 F.3d at 902 (emphasis added).

"[U]nduly tight handcuffing can constitute excessive force where a plaintiff alleges some actual injury from the handcuffing and alleges that an officer ignored a plaintiff's timely complaints (or was otherwise made aware) that the handcuffs were too tight." *Cortez v. McCauley*, 478 F.3d 1108, 1129 (10th Cir. 2007). The undisputed evidence shows that the handcuffs did not start hurting Plaintiff until he leaned back in his seat and readjusted his hands and then began struggling with the handcuffs. (Mot., Ex. D at 54, ll. 1–12; at 68, ll. 2–22.) Plaintiff did not complain about the handcuffs being too tight or hurting him until Defendant got back into his patrol car and put the car into gear to go to the Falcon Creek substation. (*Id.* at 60, ll. 2–16.) However, according to Plaintiff's own testimony, Defendant did not ignore Plaintiff's complaints about the handcuffs. Rather, Plaintiff testified that he and Defendant got to the police station "pretty quick, because [Defendant] sped up. He started going fast when I complained to him." (Mot., Ex. D, ll. 7–8.) Moreover, the trip to the police station took only twelve minutes,

7

and there is no evidence to suggest that Plaintiff complained about the handcuffs more than once on the way to the police station.[1] (Mot., Ex. A, ¶ 15; Ex. B, ¶ 11.)

> [T]he Tenth Circuit has held that no claim for excessive force existed even though a plaintiff was handcuffed behind the back and remained handcuffed for 20 minutes, complained repeatedly that the handcuffs were too tight and of pain, and suffered damage to her shoulder and her radial nerve at the wrist which prevented her from pursuing her professional and recreational piano playing.

*Kisskalt v. Fowler*, No. 13–CV–01113–WYD–KLM, 2014 WL 6617136, at *8 (D. Colo. Nov. 21, 2014) (citing *Morreale v. City of Cripple Creek*, No. 96–1220, 1997 WL 290976, at *1 (10th Cir. 1997)). *See also, Lewis v. Sandoval*, 428 F. App'x 808, 812 (10th Cir. 2011) (Finding in part that an officer did not use excessive force by waiting ten minutes to remove a pair of handcuffs while at the police station after checking the handcuffs for fit, even though the plaintiff complained of wrist pain). In each of these cases, the courts determined the defendant officers were entitled to qualified immunity because they took steps to ensure the handcuffs were not too tight after applying them. *Kisskalt*, WL 6617136, at *8; *Morreale*, 113 F.3d at *5; *Lewis* 428 F. App'x at 812.

In this case, it is undisputed that after Defendant placed Plaintiff in handcuffs, Defendant checked the handcuffs for tightness by ensuring there was a finger's width of space between each handcuff and each of Plaintiff's wrists. (Mot., Ex. B, ¶ 5; Cpl., Ex. 3 at 19.) Defendant then double-locked the handcuffs, *id.*, which prevents them from becoming tighter.[2] (Mot., Ex. B, ¶

---

[1] Plaintiff disputes this fact and states that he was placed in handcuffs at 2343 hours and left for the police station at 0015. (*See* Resp. at 9, ¶ 11.) However, because it is undisputed that Plaintiff did not complain about the handcuffs until Defendant got into his patrol car and left for the police station, it is irrelevant that Plaintiff was in handcuffs for approximately thirty-two minutes before that time.

[2] Plaintiff states that Defendant "did not properly check [the] handcuffs for tightness" and cites a portion of Defendant's deposition in support of this contention. (Resp. at 7, ¶ 4.) However,

8

5.; Ex. C, ¶ 18.) After arriving at the Falcon Substation, Defendant Granillo again checked the handcuffs for tightness and found again that they had not gotten any tighter. (Mot., Ex. B, ¶ 12; Compl., Ex. 3 at 19.) Defendant then removed the handcuffs. (Mot., Ex. B, ¶ 12.)

Accordingly, Plaintiff has failed to satisfy his burden of "demonstrat[ing] a genuine issue for trial" on his excessive force claim. *Concrete Works, Inc.*, 36 F.3d at 1518. The court need not reach Defendant's remaining arguments.

**WHEREFORE**, it is

**ORDERED** that Defendant's "Motion for Summary Judgment" (Doc. No. 52) is **GRANTED**; it is further

**ORDERED** that judgment shall enter in favor of the defendant and against the plaintiff on all claims for relief and causes of action asserted in this case. It is further

**ORDERED** that the defendant is awarded his costs to be taxed by the Clerk of Court in the time and manner prescribed by Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1. It is further

**ORDERED** that this case is **CLOSED**.

Dated this 13th day of March, 2020.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge

---

Plaintiff fails to explain how or why he believes this testimony shows that the defendant did not check the handcuffs for tightness. Moreover, Defendant indeed testified that he checked for tightness by inserting his finger between the handcuffs and the Plaintiff's wrists. (*See* Resp., Ex. A at 55, ll. 8-14.)